Hear ye, hear ye, Ms. Honorable Appellate Corker of the 2nd Judicial District is now back in session. The Honorable Anne B. Jorgensen presiding. Please be seated. Your Honor, the final case on the docket today is Student-23-0088. Kelley Philpatrick claims it's appellant. He's Baxter Healthcare Corporation's defendant's appellee. Arguing on behalf of the appellant, Mr. Timothy J. Wimu. Arguing on behalf of the appellee, Mr. Jonathan Becker. All right, gentlemen, are you both ready to proceed? Yes, Your Honor. Well, as you know, this panel is three judges. The missing judge is Justice Burkett, who was scheduled to be here this morning and had a conflict arise unexpectedly and suddenly. He will listen to the recorded oral arguments, obviously prior to our complete deliberations, and then a written decision issued in due course. So with that in mind, when you're ready, counsel. Thank you. May it please the Court, Mr. Fetterman and Honorable Justice, it's good afternoon. Again, my name is Tim Winfield on behalf of the appellant, Kelley Philpatrick. And what we have before you is an issue regarding the application of Supreme Court Rule 9D. 9D allows for filings that were timely submitted to be deemed timely if one of two things happens. Pursuant to 9D1, if there's a technical failure due to the filing system or error by the clerk itself, then that provision would apply. 9D2 was enacted for submissions that were rejected due to attorney or user error, if good cause is shown. The purpose of 9D was to apply flexibility to litigants in situations such as this. In fact, I would point out that the Supreme Court Committee comments specifically state that the 9D was enacted strictly for this reason. When electric filing was implemented, they indicated that they did not want the process to impede on access to justice by litigants. And that's exactly what we have here. Here, we have no technical failure or any clerk error, so it's not a 9D1 issue. What we have here is a minor user error issue, which would invoke 9D2. And then we have to ask ourselves, is relief to be provided in this situation? Isn't the question whether good cause is shown? That was exactly what I was going to say. If good cause is shown, then 92D kicks in. And to answer that question, courts have held that the factors that are to be considered under a totality of circumstances analysis are several. The first one that they relied upon was infancy of the filing system. That obviously doesn't apply here because the filing systems have been in place since 2017 or 2018, somewhere thereabouts, so that doesn't apply here. So we have to look at the other factors involved, including the timeliness of the submission. Here, it was filed admittedly on the last day of the statute of limitations, but it was filed at 1 or 6 p.m. in the afternoon. It's not a midnight filing, as the courts have admonished people from and found that there is no good cause in those situations. They also look at the substance of the document. Here, the document itself was a complaint. And the complaint itself was the same exact identical complaint that was filed, that was submitted on September 13th. It was submitted again after the rejection, within hours of that rejection. Here, and I think another factor that the courts have considered, is basically the severity of the user error. Here, we've got very minor error of failing to put the proper attorney number in. The filing attorney used the firm's ID as opposed to his ARDC number, as is required under the local rules of Lake County. Therefore, the submission was rejected. So when you look at performing this analysis, the plaintiff relies heavily upon the Davis v. Maywood case. In fact, the facts in that case are almost identical to what we have here. In Davis, the attorney filed- Not exactly. There's a big difference from the get-go. That was two weeks into Cook County's start of e-filing, and they're the largest county, the largest e-filer in the state. Isn't that like a major consideration in the resolution there? There was, but that obviously doesn't apply here, obviously. But I think the error that they focused on, and what I meant to say as far as the identical facts, was the severity of the error in that case was almost identical to the severity of the error here. Could I ask, and I agree with you that Davis is an important case, but I see a couple of differences. One is what Justice Jorgensen just pointed out, and the second is the court goes on in Davis for at least one long paragraph about how the error was, and I'll use my term, not necessarily because I don't have it in front of me, but it was a forgivable error in that. In that case, the attorney was required to enter both their Cook County number and their ARDC number, and yet there was a third data field that was ambiguously titled. I think the court says confusing at best or misleading at worst. It was something like cross-case reference number, and then there they were supposed to understand that they were to enter their Cook County number again. And the court, I mean, they really, just the court there goes into quite a bit of detail about their observation that that was not intuitive, that it was, as I said, confusing, misleading. They think they said, use the phrase, no fault of the attorney. I mean, here, I maybe, I don't quite see this error here as the same, and I understand, but I, you know, understand that you do. But this, the attorney or whoever was filing entered the Cook number in a Lake County case, and when they were supposed to enter their ARDC number. Bottom line is, Davis says, I think they say it's an understandable, forgivable, they use phrases like that for this technical error. Do you think that's in, that what happened here is in the same class? I think it's analogous to that, yes, because here we have, in fact, it may even be considered a lesser error than that, because in this situation, Your Honor, the plaintiff attorney, it's not like he omitted to include an attorney number, as in the Davis case, he included an attorney number. Unfortunately, he was not aware of the local rule and admittedly entered the wrong number. So I think it's analogous as far as the severity of the, or type of error itself, involving the input of an attorney number in the attorney envelope. But I guess, you know, to me, the point of that whole discussion in Davis, is that the court was really laying this on the program. I understand that. Is there something ambiguous about the program? And I forgot one other thing, that in that case, the Davis case, the court found out on the net, I assume, I don't know if they say this, but they found that Tyler, the software engineers, put out on their site a global sort of warning that, hey, watch out for this cross-case reference number or whatever it was exactly called. People are being misled by it. I don't, I mean, I'm concerned that that may not be analogous. We don't have that here, admittedly. But what we do have, and I would point out other language in Davis as far as how this is quite similar to the Davis case, was in the Davis case, the court made a point of clearly pointing out that the e-filing envelope, where the number is inputted, is not part of the complaint itself. It also indicated it's not required under the Supreme Court rules of civil procedure, but rather it's just part of the administrative procedure for e-filing. So I think if you look at that language, that ties it in almost exactly to what we have here. I literally knew that, excuse me for interrupting, but, you know, Davis does say that. And then I think they point to two federal cases which definitely say things like that. This isn't part of the complaint. This is a procedure. It's not a legal requirement. But the federal cases both spoke to, and I think they're both cited in Davis, both spoke to a federal rule that says something like if the complaint passes legal muster, the clerk in federal court can't refuse it. And both cases point to that as saying, hey, the clerk is not a judge and we're not. But Illinois has cases that really kind of say the opposite. And the other thing I'd point out and I'd ask you to address is that that left opinion said, you point to the fact that the complaint that was ultimately filed was similar to, or excuse me, is the same as, I'm not sure that's in the record, but let's assume it is, is the same as what was ultimately filed. In the left case, I think it's Justice Brennan was the writer. And he took issue with that, what's the word I'm looking for, identicality of the attempt file versus the ultimate file. He said that's irrelevant and didn't want to consider that. He disagreed with Davis. In the left, the errors committed by the user, the attorney that submitted it, are far more egregious than what we have here. In that case, there's additional errors that were included, filing a group exhibit with the motion together as one document. So basically they rejected it because there was multiple filings in one transaction. In that case, the attorney didn't file an appearance fee, I'm sorry, didn't pay the filing fee and also didn't file his appearance as a respondent when addressing that motion. So I think left clearly is far more egregious than the minor issue that we have at hand here. No, I give you that. You're right. I mean, there were different errors, but there is that language in there where the court says we don't agree with that factor that the Davis court used. We don't think the identicality of the tenth file versus the ultimate file is important or good policy. The left court did say that this was not a minor error as was in Davis, such as essentially a Scribner's error when submitting the attorney code. So I think it's more analogous to Davis than O'Gara or left in that matter. But getting back to the issue at hand, the only error here was not putting the proper attorney code in the envelope. The complaint itself was fine. And upon rejection, plaintiff had submitted the identical complaint and it was also submitted in a timely manner within hours of that notification. And the defendant in Davis argued that only clerical errors can be good cause, and the court expressly rejected that contention and said that that would be a 9D1 assertion. A 9D2 is what accounts for attorney error or user error. And so when the analysis was completed in that case, they said it wasn't, at that point, it wasn't a midnight filing. It was filed at 1032 in the morning. It was not a hastily filed because of that. And they said that was a factor weighing in the plaintiff's favor as we have here. The plaintiff promptly corrected the error. They said that weighs in the plaintiff's favor as well. And they said the complaint itself was properly formatted. So the only complaint in Davis was the minor error, and they said that weighs in favor of the plaintiff or the attorney error as well when they were performing their analysis under the totality of the circumstances. So the Davis court ultimately decided that it was at user discretion for the trial court to find good cause, to not find good cause shown in that circumstance for 9D2 relief. And they remanded the case with instructions to correct the filing date non pro ton. And so that's what we would ask the court to do in this situation as well. We'll point out, also distinguish the O'Gara case, which the defendant relies upon. In that case, just like the left plaintiff in that case, or the attorney in that case, they had more reduced errors than we have here where it's just an attorney coding error at that point. In O'Gara, they had a midnight filing in that one as well. It was at 11.52 p.m. They had an incorrect filing description. They used they failed to pay the filing fees in that case as well. They also found that the attorney error was completely avoidable. Doesn't that apply here as well? Well, I think all attorney errors are completely avoidable. That's the nature of an error itself. But I think that's why 9D2 gives the attorney a break if, and the courts are to show some leniency in those situations, if it's a minor error and it's an identical complaint. And if everything else within what was filed is correct and accurate and it's timely corrected. And that's what we have here. So when you apply the totality of circumstances, I think it falls in line with Davis, and the court should follow the same reasoning as far as in the case at hand as in Davis. Is that allowed under the abusive discretion standard, though? That's a concern. I'm sorry. Is what allowed? Is it allowed for us to, you know, analyze it under Davis and then make a ruling? You know, my concern is it's the abusive discretion standard here. And while, you know, one judge might make a decision in this lane and another might make a decision in an opposite lane, and yet really on more or less the same facts, both could be affirmed if there's not an abusive discretion. So it's a tough road to hoe, don't you think? I don't think so, because I think Davis and Aldera and Lyft, they spell that all out and show that when it's a minor error, that's the whole purpose of 92. And I can't possibly think of an error more minor than failing to put the correct attorney code in. I've been trying to think about that, and I can't think of anything more minute than failing to put the attorney error in the envelope when everything else on its face is fine. So, again, I would ask that the courts find that there was an abusive discretion by the trial court here and remand the case to correct the filing date. Thank you, Your Honors. Thank you. Good morning. Afternoon. Good afternoon, Your Honor. Excuse me. Good afternoon. Presiding Justice. Justice. Mr. Warfield. May it please the Court. My name is Jonathan Fetterman, and I represent Defendant Appelli, Baxter Healthcare Corporation. As opposing counsel mentioned, the sole issue pursuant to the trial court's ruling is whether the trial court abused its discretion by rejecting relief under Illinois Supreme Court Rule 92. There are multiple reasons why the trial court should be affirmed, and the first of those reasons is that there's simply no evidence in the record that demonstrates that the complaint was even attempted to be timely filed. Plaintiff did not file, neither plaintiff nor her counsel, filed an affidavit in support of their request for relief under Rule 92. The only documents that was filed in support of that relief was, and the record is C-51 and C-52, are two standalone documents that purport to be filing submissions. But pursuant to the record, there's simply no foundation to demonstrate that the evidence was actually admissible, and furthermore, those documents do not even identify Ms. Kilpatrick at all. So there's simply no way to know whether... There's a number on there. And your contention is that's not tied up to the complaint? The number that... Is there a cover sheet? Does it state the name of the case, or it just says the number of the transaction? If you look at C-51, I believe you're referring to the right-hand corner. I'm sorry. Excuse me. The record is C-51, and I believe you're referring to the number on the upper right-hand corner. It has an envelope number and a case number, but I did not see any kind of tie or connection that would make it obvious that it relates to Ms. Kilpatrick's complaint. Now, in Ms. Kilpatrick's appellate brief, rather than cite to the record, she attached some exhibits, but obviously those exhibits are improper and should be stricken, and those exhibits actually contain different information. There's an additional page that was not part of the record. So pursuant to the record, there's simply no admissible evidence to demonstrate that Ms. Kilpatrick or her counsel attempted to timely file the complaint, failed to do so, or why they failed to do so. And absent evidence in the record, excuse me, absent support in the record, Ms. Kilpatrick cannot meet her burden to demonstrate that the trial court abused its discretion. Would it be fair to... That cover sheet is attached to the response to your motion to dismiss, true or false? I might have that. That's correct. Bob Baxter filed the motion to dismiss. So if you tied that together with, you know, the attorney's 137 obligation and the discussion in the motion that here was the cover sheet, do you think it would be unfair for this court to say, well, it shows, does it have a time, that first page? I believe that it does state a time for the purported filing submission, C-51. It would not be unfair. It would be fair to say that the evidence is not in the record. And the reason for that is if you look at Leff and you look at O'Gara, both supported their request for relief for Rule 92 with affidavits because you need, a litigant has to put forth an affidavit actually demonstrating good cause. Simply stating it in a brief is insufficient. There must actually be admissible evidence. And here, there's simply no evidence signed under verification. There's nothing under, I believe it's Certification 109. There's just simply nothing in the record. And it would also be fair to hold that there is not evidence in this matter because the rules of evidence demand that foundation is laid for documents to be what they purport to be. And here, without an affidavit, there's simply no foundation to support that C-51 or C-52 are what Ms. Kilpatrick claims them to be now. But there's no, there's nothing in the rule or in any case is there that says you've got to have an affidavit. I'm not, and I'm not in any way responding to you raised in your briefs complaints about things that were being purported to be put forth for this court that you claim were not in the record. I'm setting those aside for a minute. I don't know of any case that says you've got to have an affidavit. I'm not aware of cases. Although I do, you know, I hear your point of view that that wouldn't be a bad thing to do. It certainly wouldn't be a bad thing to do. I'm not aware of any case that specifically states that there must be an affidavit in support. But there is the Miller v. Tom case, 2023, ILAP 4th, 220429U, which states that as long as a request under Rule 92 is supported by necessary evidence, it does not need to be in a separate motion. And the inference that we can take from that statement is that there must actually be evidence put forth. And that falls within the standard under Rule 92, which is good cause. So in order to demonstrate good cause, the movement must actually establish good cause. And that's why it's also an abusive discretion standard, as the court is already obviously aware of. It's an abusive discretion standard because it's based on what evidence was actually submitted to the trial court so that the trial court can make the determination if there's good cause. And if that information is not actually in the record, as here Baxter purports it's not in the record, then there's simply no way for this panel to be able to review whether or not there actually was good cause. And let me take a step back. As this court I'm sure is well aware, the appellant bears the burden of proving a valid and complete record. And so here Ms. Kilpatrick was required to put forth a valid record to support her contention that the trial court abused its discretion. This court reviewing the record simply cannot come to that conclusion because there's no evidence whatsoever in support of that deposition. And even beyond, even assuming arguendo, that the statements made in the response brief, the unsubstantiated statements made in the response brief, that the Ms. Kilpatrick waited until the last- In the trial court response brief. I'm sorry? The trial court response brief. Yes, in the trial court response. Assuming that Ms. Kilpatrick's counsel waited until the last day before the statute of limitations ran and that the error was by using the incorrect attorney code. That is simply not good cause under Illinois. And Ms. Kilpatrick ignores the case that we cited, which is Bean v. Board of Election Commissioners for City of Chicago Electoral Board, 2023, ILAP 1st, 230239-2. That's an election case though, isn't it? I'm sorry? That's an election case? It is an election case, but it has a discussion regarding Rule 92. And there's simply no limitation as to why that analysis would not apply here. And what the court noted in that case is that while it was not a midnight filing, the movement waited until the last day before the deadline. And that was simply insufficient good cause. So we know based on Bean that waiting until the last day by itself is not going to be automatic, that a movement is not going to automatically receive relief under Rule 92. And the only other reason that was provided in the response to the motion to dismiss is that Ms. Kilpatrick's counsel failed to put the correct attorney code. Isn't that really a minor, minor, minor? I don't know how to answer that. Well, the problem is, John, it's a filing submission requirement. And as LEF identified, the trial court is a gatekeeper, and filing submissions should be adhered to. And I think I have the exact quote. You see, the court rejected, in LEF specifically, the court distinguished Davis and rejected the contention that if there is no substantial difference between the filings, that there would be good cause. And Davis is a little bit distinguishable, too, as Justice Mullen alluded to, that there is an inherent ambiguity in Davis. But LEF resolved whatever ambiguity there was as to whether a filing code or something of that nature would be good cause. Because LEF specifically said that a trial court serves a gatekeeping function and that to provide for good cause for failing to provide the filing submissions correctly would essentially eviscerate those filing submissions. So LEF has effectively answered that even if it's a minor error, that that would still be insufficient for good cause. And the quote that, the problem with Ms. Kilpatrick's argument, is that she states that LEF identifies that the attorney code is minor, but that's not what LEF actually says. LEF was distinguishing Davis, where we just talked about that inherent ambiguity between multiple attorney code numbers that were not obvious to the litigants, by noting, and I'm going to give the exact quote because I don't want to misstate this. The court noted that the failure to submit the document individually was not as minor as the mere failure to insert an attorney code in one section of an e-filing when the same code had been provided in another section. And that's in paragraph 31 of the LEF decision. And Davis, they gave all the right information. It just didn't do it three times. Exactly, because there was an inherent ambiguity within the filing submission, beyond really being in its infancy, that a litigant would have no way to know what information they actually needed to put forth. Here, there is no suggestion that there was any kind of ambiguity with the filing submissions that Ms. Kilpatrick or her counsel could struggle with. That's simply not in the record, and it would be pure speculation to assume that's the case. So Davis is clearly distinguishable. LEF is directly on point. And in O'Gara, further supports that there was no good cause. O'Gara, the only main difference is that the filing was attempted at 1152 p.m. on the last day of the filing. And the court in Obra Dicta stated that had the movement not waited until 1152, the court might have made a different decision. By no means does that mean the court would have held that there was good cause. And so obviously the first issue is that there's simply no support in the record that a complaint was ever timely filed or attempted to be timely filed. And beyond the lack of evidence or the lack of information in the record, there's not been any information put forth that would actually support good cause. And I do want to point out the abusive discretion standard, as I believe Justice Mullen was talking about with opposing counsel. There is no ñ a movement does not automatically receive relief under Rule 92. It's the movement's requirement and burden to put forth evidence to support good cause. And so it's an abusive discretion standard to suggest that a user error on the last day to timely file a submission is automatically good cause, would take away that abusive discretion standard and instead state that it is always proper for a litigant to wait until the last day and make a user error in screwing up the filing submissions. And that's certainly not what the abusive discretion standard supports. The last point that we would like to make, and I did allude to this earlier, Ms. Kilpatrick failed to cite to the record in her brief and sporadically cited to it in her reply brief, but instead attached exhibits. We did file a ñ we addressed that issue in our response, and then we filed a separate motion to strike the references to the exhibits for the reply brief. We once again ask that the Illinois law is well established. Exhibits are improper. The record is the record. We ask that the court strike the exhibits to the initial brief, and we ask that the court disregard any statement that is either not referenced, that is not cited to the record, or that the record does not support. And unless the court has any additional questions for me, thank you very much. Thank you, counsel. And, counsel, did you wish to reply? Yes. Very briefly, I want to address some of the points made by opposing counsel. As far as the validity of the submission itself, that has been relied upon by the plaintiff, by the defendant, and by the trial court from the beginning. Are you referring to the additional material that was in your opening brief? No, I'm referring to the defendant's argument that there is no evidence that the complaint was initially submitted on September 13th, and I think there's clear evidence that it was. But I think that's his point. What evidence is in the record? They see C-51 and C-52. C-51 is the submissions showing that it was submitted on September 13th at 1.06 p.m. And C-52, with the same envelope number, has the identical case number referred to pursuant to the identity of the envelope number itself. Is it the L number or the envelope number? The envelope number. Okay. And showing that it's the exact identical case in which it was filed. Wait, wait. And 52, is that the rejection? 52 was the rejection, yes. And the court obviously relied upon those dates and pleadings and submissions as being the actual dates. So either they were aware of it at that time, or the trial court took judicial notice of the filing date being September 13th. You have to put that in the record. You can't just, in your own mind, take judicial notice of something. The court has to. I mean, his point is it's not in the record. How do we look at something that is outside the four corners of the record? I think C-51 is part of the record, and they were attached as exhibits in the initial case. You know, even they were submitted as admissions in the appellate case. There's a little more detail, what are apparently additional pages that seem to, you know, I'll say match or it appears that C-51 and 52 are the face pages of multiple page documents, and it appears to me, and I could have this wrong, but that you attached the multi-page documents with C-51 and C-52 at the top of each. You attached them to your opening brief, and the argument is that's not in the record as we speak of it up here. But I think that there's enough in the record to point that it is a 12-page complaint filed on that date, and the rejection of it was two days later of that same 12-page complaint. I guess here's the bottom line. Let's assume for the sake of argument you filed it at 1 o'clock in the afternoon. The trial judge knew that. The trial judge had the case law, and there are distinctions and differences in O'Gara and in Davis and in the left case, which is the second district case. The trial judge looks at this. Tell me where this is an abuse of discretion. Because, I mean, if you can look at it and well-educated minds can differ, the judge made a decision. How is that so egregious that it's an abuse of discretion here? I'll address that, Your Honor. Okay. In the initial motion itself, in the response, in the reply to the motion itself, the trial court was only provided an argument that this wasn't in its infancy. And the court relied upon Leff and O'Gara. There's no record as far as it wasn't transcribed, but the court did in its order indicate that the court was relying upon O'Gara and Leff, their reasoning in those, was that the filings there were while the electronic filing system was in its infancy. So that's what the court was relying upon. Well, that's why it distinguished Davis. Pardon me? I'm sorry. You're implying that the trial judge distinguished Davis on the premise that when the Davis error occurred, e-filing in Cook County was in its infancy. Exactly. Which is a, I mean, that is a, you even conceded that's a pretty significant factual difference, right? It is a factual difference, but I would point out that it's strikingly similar, similarities between the actual error itself, between Davis and I think that, and the reasoning that the court held as far as when they performed their fatality circumstances analysis, and all those factors weigh heavily in favor of the plaintiff in this particular matter. I'll move on as far as the Bean case. That case was a judicial review of an election board matter, and the court readily distinguished that case because of that, and also further went on to say that there's no cases where election board cases rely upon Rule 9D. So I think that's a major distinction factor here in the court. In that case, specifically refused to rely upon Davis for that reason, and I think this court, likewise, should disregard the Bean case, since we don't have an election board case at issue here. So basically, in summary, I would contend that what we have here is a minor attorney court error, similar to what there was in Davis, equivalent to a Scribner's error, and if it was in person, the attorney filing would simply have likely crossed it out, put in a new number, or it was 1 o'clock in the afternoon. But isn't that the risk you accept when you use e-filing? I mean, that's the way it is. My point is it was done at 1 o'clock in the afternoon, and if this was a Scribner's error as that presented in the olden days with the paper filing, it would have been corrected right then and there, or the attorney would have went back in. It was 1 o'clock, so he could have went to the office, actually retyped the attorney number and submitted it later that day. So here, I think Rule 9D was enacted specifically to address such minor errors such as this and to allow the litigants to have their day in court. And we would ask that the- Let me ask you this, too. You said that, you know, there was no transcript. It was just the written order. Correct. You had at your disposal an opportunity for a bystander's report to outline what arguments were made and what the court relied on. I think it's very clear what the court relied on because if you look at- No, no, that's not my point. The bystander's record would have said these were all the arguments presented. Fair, but if you look at the four corners of the briefs that were submitted, it was the only issue that was presented to the court as far as why 9D2 shouldn't apply was because the filing system was no longer in its infancy. So I think that's clear if you look at the briefs themselves. Okay, fair enough. So for all the reasons mentioned above, unless the court has any additional questions, I will, again, ask that good cause be shown and that the case be remanded. We find that there was an error that the trial court should have found good cause and it was an abuse of discretion. Yes, yes, Your Honor. Thank you. Okay. Well, thank you both very much. Excellent arguments this afternoon. As I indicated, Justice Burkett was unavailable today. We will review the recording of the argument, have our deliberations, and issue a written decision in due course.